**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **Annette H. Ardis,** | ) | **Civil Action No.:** 3:25-cv-13304-SAL |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Experian Information Solutions, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Annette H. Ardis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8.     Venue is proper in the Columbia Division because the Plaintiff resides in Lee County, and the Defendant transacted business in this division.

## PARTIES

9.     Plaintiff, Annette H. Ardis, is a resident and citizen of the State of South Carolina, Lee County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company

2

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.    Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14.    The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file; failed to reinvestigate Plaintiff's disputes; and failed to block fraudulent information after receipt of a police report.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

**FACTUAL ALLEGATIONS**

15.    In 2019, Plaintiff first became the victim of identity theft and had numerous accounts opened in her name without her knowledge or permission.

16.    In 2020, Plaintiff filed a police report, filed an identity theft affidavit with the Federal Trade Commission, and placed a fraud alert on her credit reports.

17.    On or about March 30, 2020, Defendant sent Plaintiff a postcard confirming a fraud alert had been placed on her Experian credit reports.

18.    In 2024, Plaintiff began receiving debt collection letters in the mail for credit card accounts that did not belong to her.  This was extremely frightening to Plaintiff as she does not have or use credit cards.  In fact, Plaintiff is and always has been adamant about using only cash or checks as forms of payment.

19.    In February 2025, worried that she may have again been the victim of identity theft, Plaintiff tried to obtain copies of her credit reports online.  However, when Plaintiff tried to get copies of her credit reports, she could not answer the identity verification questions because the questions contained information related to the identity thief.  As a result, Plaintiff was denied access.

20.    During this process, Plaintiff learned that the identity thief was living at 427 New Castle Road, Greenville, South Carolina.  Plaintiff also learned that the thief had paid her own electricity bill with one of the fraudulent credit cards.

21.    On February 7, 2025, Plaintiff filed a police report with the Lee County Sheriff's Office regarding the theft of her identity.

22.    On February 7, 2025, Plaintiff also filed an Identity Theft Report with the Federal

Trade Commission wherein Plaintiff provided the address used by the identity thief to open the fraudulent accounts. Plaintiff also provided the police officer's name and report number for Plaintiff's police report.

23. On or about February 7, 2025, Plaintiff called Experian to request a copy of her credit report by mail.

24. On or about February 25, 2025, Plaintiff received a copy of her Experian credit report.

25. Upon review of her credit report, Plaintiff learned she had a FICO score of 565, which was labeled as poor. She also discovered that numerous fraudulent accounts were reporting on her credit, as well as an address where she had never lived, three variations of her social security number, and two phone numbers, none of which belonged to Plaintiff.

26. On or about March 24, 2025, Plaintiff sent Defendant a dispute letter wherein she informed Defendant that she had been the victim of identity theft and fraud. Plaintiff requested Defendant remove all of the items appearing on her credit report that did not belong to her. Specifically, Plaintiff listed Merrick Bank, Acct. No. 546316xxxxx, National Credit Adjusters, Acct. No. 314311xxxxxx, LVNV Funding LLC, Acct No. 470793xxxxxx, JPMCB Card Services, Acct No. 426684xxxxxx, Quick Credit, Acct No. 118225xxxx, and Capital One Bank USA NA, Acct. No., 517805xxxxxx as accounts fraudulently opened in her name without her knowledge or permission. Plaintiff also disputed all hard inquiries except Synovus Bank, as that is the only place she had applied for credit. Finally, Plaintiff disputed the address of 427 New Castle Road in Greenwood, South Carolina, as she had never lived at that address. Plaintiff provided her address, full

social security number, and date of birth in her letter, and requested Defendant add a fraud alert to her credit file.

27.     On or about May 25, 2025, Defendant sent Plaintiff a postcard confirming an initial security alert had been added to her Experian credit file.

28.     On or about May 25, 2025, Defendant also forwarded its Dispute Results to Plaintiff stating its reinvestigation of Plaintiff's disputes was now complete. Defendant informed Plaintiff that since it had forwarded the February 25, 2025, credit report to Plaintiff, Defendant had discovered an inaccuracy.  Accordingly, Defendant stated it was providing Plaintiff with a new credit report with the inaccuracy corrected. However, Defendant did not disclose to Plaintiff what information was corrected.  Upon review of the Investigation Results/credit report, the JPMCB Card, Resurgent/LVNV Funding, Merrick Bank Corp, National Credit Adjusters, L.L.C., and Quick Credit accounts all still remained on Plaintiff's credit report as derogatory accounts belonging to Plaintiff.  Likewise, the fraudulent address, social security numbers, and telephone numbers also remained.

29.     On or about June 13, 2025, Plaintiff sent a second dispute letter to Defendant wherein she stated she had received the results of Defendant's reinvestigation into her disputes, but the fraudulent accounts and incorrect information continued to be reported on her credit report.  Plaintiff again told Defendant she had been the victim of identity theft and fraud. Plaintiff specifically disputed the Merrick Bank, Acct. No. 546316xxxxxx, National Credit Adjusters, Acct. No. 314311xxxxxx, LVNV Funding LLC, Acct No. 470793xxxxxx, JPMCB Card Services, Acct No. 426684xxxxxx, and Quick Credit, Acct No. 118225xxxx, as fraudulent accounts opened by the identity thief.  Plaintiff also

6

disputed the address on New Castle Road in Greenwood, South Carolina, because she had never lived at that address. Finally, Plaintiff provided Defendant with a copy of the police report she had filed regarding the theft of her identity. Plaintiff's address, date of birth and full social security number were also provided in her letter.

30.    Defendant received Plaintiff's second dispute and police report on June 18, 2025.

31.    On or about July 13, 2025, Defendant forwarded its Dispute Results to Plaintiff. In these results, Defendant informed Plaintiff that the Merrick Bank, Quick Credit, and LVNV Funding accounts were verified as accurate and updated. As a result, all three accounts continued to be reported as belonging to Plaintiff. With regard to the JPMCB Card account, Defendant stated that JPMCB had certified to Defendant that the information was accurate. As a result, that account also continued reporting as belonging to Plaintiff. The National Credit Adjusters account and the Resurgent Capital Services account were allegedly deleted from Plaintiff's credit report. However, upon review of the report, the LVNV account was changed to Resurgent/LVNV Funding and it continued to report a derogatory collection account as belonging to Plaintiff.

32.    On or about July 31, 2025, Plaintiff sent a third dispute letter to Defendant, wherein Plaintiff stated she had received Defendant's investigation results, but numerous fraudulent accounts were still reporting on her credit report. Plaintiff again disputed the Merrick Bank, Resurgent/LVNV Funding LLC, JPMCB Card Services and Quick Credit accounts as fraudulent accounts and asked for them to be removed immediately. Plaintiff also again disputed the address of 427 New Castle Road, Greenwood, South Carolina 29649, as an address at which she had never lived. Plaintiff also stated a social security number that did

not belong to her was reporting and asked Defendant to remove any social security numbers that did not completely match her social security number.  With her dispute, Plaintiff provided another copy of her police report.

33.     Defendant received Plaintiff's third dispute and police report on August 5, 2025.

34.     On or about August 6, 2025, Defendant forwarded a letter to Plaintiff, wherein Defendant stated it had received Plaintiff's dispute, but didn't believe it actually came from Plaintiff.  As a result, Defendant refused to take any action on Plaintiff's disputes.  Plaintiff was instructed that, if inaccurate information was on her credit report, she should call Defendant at 833-421-3400.

35.     On September 9, 2025, Plaintiff called Defendant at the number provided.  During this call, Plaintiff spoke with Michelle and two other representatives.   With each person, Plaintiff explained she was the victim of identity theft and she needed the fraudulent accounts removed.  Defendant's employees told Plaintiff she needed to contact the individual creditors because there was nothing Defendant could do.  Defendant's employees specifically admitted to Plaintiff that all Defendant does is forward her dispute to the company and if the company verifies the account, it remains on the credit report.

36.     Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

37.     Defendant improperly ignored Plaintiff's police report and refused to block the fraudulent accounts.

38.     To date, Defendant continues to report false and fraudulent information on Plaintiff's credit report.

8

39.     Upon receipt of the ACDV responses from the furnishers of the fraudulent account information, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

40.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information.  The CRA must make some independent investigation of its own.  "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

41.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources.  *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

42.     Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages.  *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

43.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 42 hereinbefore as if fully set forth herein.

44.     Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

45.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

46.     As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, severe anxiety, worry, inability to focus, constant racing thoughts, the feeling of loss of control of her life, fear, loss of sleep, headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

10

47.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

48.    In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

49.    Plaintiff is entitled to her attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

50.    The Plaintiff adopts the averments and allegations of paragraphs 15 through 49 hereinbefore as if fully set forth herein.

51.    Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to:  (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

52.    Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

53.    Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

54.    As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, severe anxiety, worry, inability to focus, constant racing thoughts, the feeling of loss of control of her life, fear, loss of sleep,

headaches, irritability, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score and credit reputation precluded him from seeking further credit opportunities and also caused him to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

55.    Plaintiff is entitled to actual damages in an amount to be determined by the jury.

56.    In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

57.    Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

58.    Plaintiff is entitled to her attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.    Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.    Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.    Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.    For such other and further relief as the Court may deem just and proper

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223